Michael Rapkine (#222811)
mrapkine@afrct.com
ANGLIN, FLEWELLING, RASMUSSEN,
   CAMPBELL & TRYTTEN LLP
199 South Los Robles Avenue, Suite 600
Pasadena, California 91101-2459
Tel: (626) 535-1900 | Fax: (626) 577-7764

Attorneys for Defendant
WELLS FARGO BANK, N.A
("Wells Fargo")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| LONNIE G. SCHMIDT,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, NA.; NDEx WEST, L.L.C.; and DOES 1 – 25, inclusive,<br><br>Defendants. | CASE NO.: 3:13-CV-01509-MEJ<br><br>[The Honorable Maria-Elena James]<br><br>**DEFENDANT WELLS FARGO'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed Concurrently with Request for Judicial Notice]<br><br>Date:      June 6, 2013<br>Time:     10:00 a.m.<br>Ctrm:     B (15th Floor) |

TO PLAINTIFF:

PLEASE TAKE NOTICE that on June 6, 2013 at 10:00 a.m. in courtroom B of the

above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, the

Honorable Maria-Elena James presiding, defendant Wells Fargo Bank, N.A. ("Wells Fargo"),

will move to dismiss the first through sixth claims in the complaint, pursuant to FRCP 12(b)(6).

/ / /

/ / /

/ / /

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

Grounds for the 12(b)(6) motion are as follows:

**1.     First Claim: Fraud**

Plaintiff fails to state a claim for fraud because:  (i) this state law claim is preempted by the Home Owners' Loan Act; (ii) judicially noticeable documents show that Wells Fargo did not make a misrepresentation; (iii) this cause of action which challenges the foreclosure process must be accompanied by a legitimate tender of the debt that is owed to Wells Fargo; (iv) plaintiff cannot demonstrate "justifiable reliance" or resulting damages; and (v) to the extent that plaintiff seeks damages, the pleadings fail to pierce the qualified common-interest privilege of Civil Code §§ 47 and 2924(d).

**2.     Second Claim: Wrongful Foreclosure**

Plaintiff fails to state a claim for wrongful foreclosure because:  (i) this state law claim is preempted by the Home Owners' Loan Act; (ii) plaintiff's lack of tender vitiates this claim; (iii) the "securitization" allegations are both factually incorrect and fail as a matter of law; (iv) plaintiff's allegations concerning an "improper assignment" are likewise defective; (v) NDEX West, LLC was the duly appointed trustee and therefore had authority to act as Wells Fargo's agent during the foreclosure process; (vi) even if plaintiff could demonstrate a flaw in the foreclosure mechanics, he cannot demonstrate that he was prejudiced by the purported defect; and (vii) to the extent that plaintiff seeks damages, the pleadings fail to pierce the qualified common-interest privilege of Civil Code §§ 47 and 2924(d).

**3.     Third Claim: Quiet Title**

Plaintiff fails to state a quiet title claim because:  (i) this state law claim is preempted by the Home Owners' Loan Act; (ii) plaintiff's lack of tender vitiates this claim; (iii) the rescission theories upon which this claim rests are defective; and (iv) this claim is predicated on other "wrongful foreclosure" allegations that are factually incorrect and fail as a matter of law.

**4.     Fourth Claim: Slander of Title**

Plaintiff fails to state a claim for slander of title because:  (i) this state law claim is preempted by the Home Owners' Loan Act; (ii) plaintiff's lack of tender vitiates this claim; (iii) Wells Fargo and its trustee did not publish a false statement; (iv) this claim is predicated on

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   "wrongful foreclosure" allegations that are factually incorrect and fail as a matter of law; and

2   (v) the pleadings fail to pierce the qualified common-interest privilege of Civil Code §§ 47 and

3   2924(d).

4       **5.**    <u>**Fifth Claim: Civil Conspiracy**</u>

5       Plaintiff fails to state a claim for civil conspiracy because:  (i) this state law claim is

6   preempted by the Home Owners' Loan Act; (ii) plaintiff's lack of tender vitiates this claim;

7   (iii) civil conspiracy is not a recognized, independent cause of action; and (iv) plaintiff fails to

8   allege a viable underlying tort to support this conspiracy claim.

9       **6.**    <u>**Sixth Claim: Violation of Bus. & Prof. Code § 17200, *et seq*.**</u>

10      Plaintiff fails to state a claim for unfair competition because:  (i) this state law claim is

11  preempted by the Home Owners' Loan Act; (ii) this claim is solely predicated on prior causes of

12  action which are fatally defective; (iii) plaintiff lacks standing to bring a UCL claim; and

13  (vi) plaintiff's lack of tender vitiates this claim.

14      PLEASE TAKE FURTHER NOTICE that pursuant to Local Rule 7-3(a) and 7-3(c), the

15  opposition to this motion must be filed and served within 14 days after this motion is filed and

16  served.  The reply must be filed and served within 7 days after the opposition is filed and served.

17      The motion to dismiss is based upon this notice, the memorandum of points and

18  authorities, the complaint, the accompanying request for judicial notice, and on Wells Fargo's

19  argument at the hearing.

20

21                      Respectfully submitted,

22  Dated:  April 12, 2013             ANGLIN, FLEWELLING, RASMUSSEN,
                                CAMPBELL & TRYTTEN LLP

23

24                      By:   /s/ Michael Rapkine

25                        Michael Rapkine
                      mrapkine@afrct.com

26                    Attorneys for Defendant
                  WELLS FARGO BANK, N.A
                  ("Wells Fargo")

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

1. INTRODUCTION ............................................................................................ 1

2. SUMMARY OF THE COMPLAINT AND JUDICIALLY NOTICEABLE DOCUMENTS.................................................................................................. 1

3. PLAINTIFF CANNOT PROSECUTE THIS ACTION UNLESS HE TENDERS THE CONSIDERABLE DEBT OWED TO WELLS FARGO.................. 3

4. THE ENTIRE COMPLAINT IS PREEMPTED BY THE HOME OWNERS' LOAN ACT ("HOLA") .............................................................................. 5

   A. As A Federally-Chartered Savings Bank, World Savings Operated Under HOLA ............................................................................................ 5

   B. Regulations Promulgated By The OTS Preempt Any State Law That Affects The Operation Of A Federal Savings Association ................................... 6

   C. State Laws Preempted by HOLA................................................................. 6

   D. The Application of HOLA Preempts Each State Law Claim .............................. 7

5. THE FRAUD CLAIM, AS WITH THE REST OF THE COMPLAINT, IS PREDICATED ON ALLEGATIONS WHICH ARE FACTUALLY INCORRECT AND FAIL AS A MATTER OF LAW ............................................. 10

   A. Wells Fargo Clearly Had Standing To Foreclose on the Subject Property.................................................................................................. 10

   B. A Completed Non-Judicial Foreclosure Is A Final Adjudication Of The Rights Of A Borrower And Lender ......................................................... 11

   C. NDEX Was Properly Substituted In As The Bank's Trustee ............................ 12

   D. The Fraud Claim Is Plagued By Other Shortcomings ........................................ 12

6. THE WRONGFUL FORECLOSURE CLAIM IS LIKEWISE DEFECTIVE ............... 13

   A. Plaintiff's "Securitization" Theory Is Both Untrue And Fails As A Matter Of Law........................................................................................ 13

   B. Contrary To Plaintiff's Allegations, No Assignment Of The Deed Of Trust Was Necessary............................................................................... 14

   C. Even If Plaintiff Could Cite A Flaw in the Foreclosure Process, He Cannot Demonstrate That He Was Prejudiced By Any Purported Defect....................................................................................................... 15

7. THERE IS NO BASIS FOR A JUDICIAL DETERMINATION QUIETING TITLE IN PLAINTIFF'S FAVOR .................................................................. 15

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

8.   THE SLANDER OF TITLE CLAIM SUFFERS FROM SERIOUS SHORTCOMINGS ................................................................................ 18

9.   CIVIL CONSPIRACY IS NOT AN INDEPENDENT CAUSE OF ACTION ............. 18

10.  THE UNFAIR COMPETITION CLAIM IS CONCLUSORY AND MERITLESS ...................................................................................... 19

11.  THE QUALIFIED PRIVILEGE OF CIVIL CODE §§ 2924(d) AND 47 DEFEATS PLAINTIFF'S DAMAGE CLAIMS ............................................ 20

12.  CONCLUSION ...................................................................................... 21

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**FEDERAL CASES**

4

*Alicea v. GE Money Bank,*
   2009 U.S. Dist. LEXIS 60813, *7-8 (N.D. Cal. July 16, 2009) ............................................. 4

5

*American Banker Association v. Lockyear,*
6    239 F. Supp. 2d 1000 (E.D. Cal. 2002).......................................................................... 5

7    *Anaya v. Advisors Lending Group,*
      2009 U.S. Dist. LEXIS 68373, *27 (E.D. Cal. Aug. 3, 2009) ................................................. 4
8

9    *Andrade v. Wachovia Mortg.,*
      2009 U.S. Dist. LEXIS 34872 (S.D. Cal. Apr. 24, 2009) ....................................................... 16

10
     *Bank of America v. The City & County of San Francisco,*
11    309 F.3d 551 (9th Cir. 2002) ........................................................................... 5, 6

12   *Benham v. Aurora Loan Servs.,*
      2009 U.S. Dist. LEXIS 91287, *3 (N.D. Cal. Sept. 30, 2009) ................................................. 13
13

14   *Bouyer v. Countrywide Bank, FSB,*
      2009 U.S. Dist. LEXIS 53940, *18-20 (N.D. Cal. June 25, 2009)........................................ 20

15   *Brown v. Bank of America,*
      2011 U.S. Dist. LEXIS 38991, *17 (E.D. Cal. Mar. 31, 2011) .............................................. 16
16

17   *Castillo v. Wachovia Mortg.,*
      2012 U.S. Dist. LEXIS 50926, *15 (N.D. Cal. Apr. 11, 2012) ............................................... 8
18

19   *Davenport v. Litton Loan Servicing,*
      2010 U.S. Dist. LEXIS 71561, *24 (N.D. Cal. July 16, 2010).............................................. 15

20
     *DeLeon v. Wells Fargo Bank, N.A.,*
21    2011 U.S. Dist. LEXIS 8296 (N.D. Cal. Jan. 28, 2011) ...................................................... 19

22   *DeLeon v. Wells Fargo Bank, N.A.,*
      729 F. Supp. 2d 1119 (N.D. Cal. June 9, 2010)....................................................... 6, 9, 10
23

24   *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta,*
      458 U.S. 141 (1982).......................................................................................... 6

25
     *Garcia v. Wachovia Mortg. Corp.,*
26    676 F. Supp. 2d 895 (C.D. Cal. 2009) ...................................................................... 16

27   *Giordano v. Wachovia Mortg., FSB,*
      2010 U.S. Dist. LEXIS 136284, *7 (N.D. Cal. Dec. 14, 2010)............................................ 9

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*,
2       100 F. Supp. 2d 1086 (C.D. Cal. Sept. 16, 1999) .................................................. 9

3   *Glendale Fed. Sav. & Loan Ass'n v. Fox*,
        459 F. Supp. 903 (C.D. Cal. 1978) ...................................................................... 6
4
    *Gomez v. Wells Fargo Home Mortg.*,
5       2011 U.S. Dist. LEXIS 134092, *36 (N.D. Cal. Nov. 21, 2011) .......................... 13

6   *Gonzalez v. Alliance Bancorp*,
        2010 U.S. Dist. LEXIS 47943, *16 (N.D. Cal. April 19, 2010).............................. 8
7
    *Guerrero v. Wells Fargo Bank, N.A.*,
8       2010 U.S. Dist. LEXIS 96261 (C.D. Cal. Sept. 14, 2010)...................................... 6

9   *Hafiz v. Greenpoint Mortg. Funding, Inc.*,
10      652 F. Supp. 2d 1039 (N.D. Cal. 2009) ............................................................. 13

11  *Hunt v. Wells Fargo Bank N.A.*,
        2011 U.S. Dist. LEXIS 29110, *2 (N.D. Cal. Mar. 21, 2011)................................ 8
12
    *Lane v. Vitek Real Estate Indus. Group*,
13      713 F. Supp. 2d 1092 (E.D. Cal. May 11, 2010) ................................................ 13

14  *Lawther v. OneWest Bank*,
15      2010 U.S. Dist. LEXIS 131090, *15 (N.D. Cal. Nov. 30, 2010) .......................... 15

16  *Marty v. Wells Fargo Bank*,
        2011 U.S. Dist. LEXIS 29686, *20 (E.D. Cal. March 22, 2011) .......................... 14
17
    *Montoya v. Countrywide Bank*,
18      2009 U.S. Dist. LEXIS 53920, *32 (N.D. Cal. June 25, 2009) .............................. 4

19  *Morrison v. Wachovia Mortgage*,
20      2012 U.S. Dist. LEXIS 38847, *19 (C.D. Cal. Jan. 9, 2012) ...........................7, 8

21  *Murillo v. Aurora Loan Services, LLC*,
        2009 U.S. Dist. LEXIS 61791, *11 (N.D. Cal. July 17, 2009)................................ 8
22
    *Naulty v. GreenPoint Mortg. Funding, Inc.*,
23      2009 U.S. Dist. LEXIS 79250, *12 (N.D. Cal. Sept. 3, 2009) .............................. 7

24  *Nguyen v. Wells Fargo Bank, N.A.*,
25      749 F. Supp. 2d 1022 (N.D. Cal. Oct. 25, 2010) ...........................................9, 10

26  *Odinma v. Aurora Loan Services*,
        2010 U.S. Dist. LEXIS 28347 (N.D. Cal. Mar. 23, 2010).................................... 8
27
    *Odinma v. Aurora Loan Servs.*,
28      2010 U.S. Dist. LEXIS 54190, *18-20 (N.D. Cal. June 3, 2010)......................... 11

*Pagtalunan v. Reunion Mortg., Inc.*,
2009 U.S. Dist. LEXIS 34811, *9-11 (N.D. Cal. Apr. 8, 2009) ............................ 16

*Parcray v. Shea Mortg., Inc.*
2010 U.S. Dist. LEXIS 40377, *24, 31 (E.D. Cal. April 23, 2010) ...................... 8, 14

*Permito v. Wells Fargo Bank, N.A.*,
2012 U.S. Dist. LEXIS 55977, *24-25 (N.D. Cal. Apr. 20, 2012) ......................... 20

*Pinales v. Quality Loan Service Corp.*,
2010 U.S. Dist. LEXIS 2114 (S.D. Cal. Sept. 22, 2010) ....................................... 8

*Reganit v. Kay-Co. Invs.*,
2009 U.S. Dist. LEXIS 34883 (E.D. Cal. Apr. 24, 2009) ...................................... 16

*Roque v. Suntrust Mortg., Inc.*,
2010 U.S. Dist. LEXIS 11546, *8 (N.D. Cal. Feb. 9, 2010) ................................. 13

*Sanchez v. Wachovia Mortg., FSB*,
2011 U.S. Dist. LEXIS 2444, *19 (S.D. Cal. Jan. 10, 2011) ................................. 8

*Silvas v. E*Trade Mortgage Corp.*,
514 F.3d 1001 (9th Cir. 2008) ............................................................................ 6, 7

*Snyder v. Wachovia Mortg.*,
2010 U.S. Dist. LEXIS 68956, *18 (E.D. Cal. July 9, 2010) ............................... 20

*Tiqui v. First Nat'l Bank of AZ*,
2010 U.S. Dist. LEXIS 33326, *12 (S.D. Apr. 5, 2010) ...................................... 16

*Winding v. Cal-Western Reconveyance Corp.*,
2011 U.S. Dist. LEXIS 8962, *33-34 (E.D. Cal. Jan. 21, 2011) ........................... 8

*Wolf v. Wells Fargo Bank, N.A.*,
2011 U.S. Dist. LEXIS 114331, *11 (N.D. Cal. Oct. 4, 2011) ............................. 14

*Wolf v. Wells Fargo Bank, N.A.*,
2011 U.S. Dist. LEXIS 117835, *3 (N.D. Cal. Oct. 12, 2011) ............................. 10

*Zlotnik v. U.S. Bancorp, et al.*,
2009 U.S. Dist. LEXIS 119857, *17-26 (N.D. Cal. Dec. 22, 2009) ....................... 6

**STATE CASES**

*Abdallah v. United Savings Bank*,
43 Cal. App. 4th 1101 (1996) .............................................................................. 4

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503, 511 (1994) .................................................................................. 18

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Brown v. Busch,*
  152 Cal. App. 2d 200 (1957) ................................................................................ 11

*Calvo v. HSBC Bank USA, N.A.,*
  2011 Cal. App. LEXIS 1184 (Cal. App. 2d Dist. 2011) .......................................... 14

*Daro v. Superior Court,*
  151 Cal. App. 4th 1079 (2007) .............................................................................. 19

*Doctors' Co. v. Superior Court,*
  49 Cal. 3d 39 (1989) .............................................................................................. 18

*Gaffney v. Downey Sav. & Loan Ass'n,*
  200 Cal. App. 3d 1154 (1988) ................................................................................. 4

*Gavina v. Smith,*
  25 Cal. 2d 501 (1944) ........................................................................................ 3, 16

*Gudger v. Manton,*
  21 Cal. 2d 537 (1943) ............................................................................................ 17

*Hall v. Time, Inc.,*
  158 Cal. App. 4th 847 (2008) ................................................................................ 19

*Kachlon v. Markowitz*
  168 Cal. App. 4th 316 (2008) ................................................................................ 20

*Kasky v. Nike, Inc.,*
  27 Cal. 4th 939 (2002) .......................................................................................... 19

*Kerr v. Rose,*
  216 Cal. App. 3d 1564 (1990) ............................................................................... 18

*Khoury v. Maly's of California, Inc.,*
  14 Cal. App. 4th 612 (1993) ................................................................................. 18

*Knapp v. Doherty,*
  123 Cal. App. 4th 76 (2004) ................................................................................. 15

*Korea Supply Company v. Lockheed Martin Corporation,*
  29 Cal. 4th 1134 (2003) ................................................................................... 18, 19

*Martin v. Kearney,*
  51 Cal. App. 3d 309 (1975) ................................................................................... 20

*Meetz v. Mohr,*
  141 Cal. 667 (1904) ................................................................................................. 3

*Melendrez v. D & I Inv.,*
  127 Cal. App. 4th 1238 (2005) .............................................................................. 11

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Nguyen v. Calhoun,*
    105 Cal. App. 4th 428 (2003) ...................................................................... 4, 9

*Sipe v. McKenna,*
    88 Cal. App. 2d 1001 (1948) ..................................................................... 3, 16

*Smith v. Hatch,*
    271 Cal. App. 2d 39 (1969) ............................................................................ 20

*Stevens v. Plumas Eureka Annex Mining Co.,*
    2 Cal. 2d 493 (1935) ...................................................................................... 11

*Touli v. Santa Cruz County Title Co.,*
    20 Cal. App. 2d 495 (1937) ....................................................................... 3, 16

*Weiss v. Washington Mutual Bank,*
    147 Cal. App. 4th 72 (2007) ............................................................................. 7

**FEDERAL STATUTES**

12 U.S.C. § 1461, *et seq.* ......................................................................................... 5

12 U.S.C. § 1464(a) ................................................................................................... 5

15 U.S.C. § 1635(b) ................................................................................................. 16

15 U.S.C. § 1635(f) .................................................................................................. 17

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ...................................................................... 18, 19

Cal. Bus. & Prof. Code § 17204 ............................................................................. 19

Cal. Civ. Code § 47 .................................................................................................. 20

Cal. Civ. Code § 47(c)(1) ......................................................................................... 20

Cal. Civ. Code § 1632 .............................................................................................. 16

Cal. Civ. Code §§ 1688 and 1691, *et seq.* .................................................................. 1

Cal. Civ. Code § 1688, *et seq.* ................................................................................. 17

Cal. Civ. Code § 1691(b) .......................................................................................... 16

Cal. Civ. Code § 2923.5 ............................................................................................. 9

Cal. Civ. Code §§ 2923.5 and 2924 .......................................................................... 9

Cal. Civ. Code § 2924 ........................................................................................ 11, 20

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

Cal. Civ. Code § 2924(c) ................................................................................... 11

Cal. Civ. Code § 2924(d) ...................................................................... 18, 19, 20

Cal. Civ. Code § 2924b .................................................................................... 12

Cal. Civ. Code § 2932.5 ................................................................................... 14

Cal. Civ. Code § 2934a(c) ............................................................................... 12

Cal. Civ. Proc. Code § 338(d) ......................................................................... 17

**REGULATIONS**

12 C.F.R. § 545.2 ............................................................................................... 6

12 C.F.R. § 560 .................................................................................................. 5

12 C.F.R. § 560.2(a) ........................................................................................... 6

12 C.F.R. § 560.2(b) ....................................................................................... 6, 7

12 C.F.R. §§ 560.2(b)(4), (9) and (10) .............................................................. 9

12 C.F.R. § 560.2(b)(10) ......................................................................... 7, 8, 9

**OTHER AUTHORITIES**

9 Witkin, Summary of California Law, *Corporations* § 198 (10th ed. 2005) .............................. 6

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   <u>INTRODUCTION</u>

This action arises from a 2007 home loan, a subsequent default, and a completed non-judicial foreclosure.  Plaintiff contends that his company gained title to the subject property through a quitclaim deed in 2011, and the complaint presents a variety of theories which challenge Wells Fargo right to conduct the foreclosure.

For a myriad of reasons, including bald assertions throughout the pleadings, allegations that fail as a matter of law, contentions which are rebutted by judicially noticeable documents, and plaintiff's failure to tender the considerable debt that is owed to Wells Fargo, the complaint does not state a viable claim. As briefed below, amendment of plaintiff's allegations would be futile and therefore a dismissal with prejudice is warranted.

## 2.   <u>SUMMARY OF THE COMPLAINT AND JUDICIALLY NOTICEABLE</u><br><u>DOCUMENTS</u>

On or around July 6, 2007, Todd Price and Jody L. Price obtained a $580,000 home loan from Wells Fargo's predecessor, World Savings Bank, FSB.[1]  (Comp. ¶¶ 11, 22).  The terms of the loan were memorialized by a promissory note and secured by a deed of trust against real property located at 4025 Encina Drive, Napa, California (the "property" or "subject property") (Comp. ¶ 1, 22).  Plaintiff attaches an unrecorded and unexecuted version of the deed of trust as Exhibit 3 to the complaint.  A true and correct copy of the <u>recorded</u> and <u>signed</u> deed of trust is attached to the accompanying Request for Judicial Notice ("RJN") as Exhibit F.

Plaintiff alleges that on December 8, 2011, the Prices attempted to unilaterally rescind the loan contract, both under the Truth-in-Lending Act ("TILA") and state law (Civil Code §§1688 and 1691, *et seq*.) (Comp. ¶ 26, see also, Comp. ¶¶ 13-15, 27-31).  As addressed later in this motion, these purported rescission requests were both untimely and legally defective.

---

[1]  World Savings Bank, FSB changed its name to "Wachovia Mortgage, FSB" and later merged into Wells Fargo Bank, N.A.  Attached to the accompanying Request for Judicial Notice ("RJN") as Exhibits A through E are documents issued by the Office of Thrift Supervision, the Office of the Comptroller of the Currency, and the FDIC that evidence this name change and subsequent merger.  For purposes of this motion, World Savings will be referred to as "Wells Fargo."

Around the same time, the Prices ceased making mortgage payments.[2]  After continued non-payment, a notice of default was recorded with the Napa County Recorder's Office on October 11, 2012. (RJN, Exh. G)  At this time, the loan was already $36,477.58 in arrears. (RJN, Exh. G, pg. 1).

According to plaintiff Lonnie G. Schmidt,[3] his company (Vintage Holdings) acquired title to the subject property in January 2012, through a quitclaim deed. (Comp. ¶ 20)  A copy of the quitclaim deed, purporting to transfer the property from the Prices to Vintage Holdings, is attached to the complaint as Exhibit 2.

On November 26, 2012, a substitution of trustee was recorded, replacing Golden West Savings Association Service Company with the new trustee, NDEX West, LLC ("NDEX") (RJN, Exh. H)  A notice of sale was recorded shortly thereafter on January 9, 2013. (RJN, Exh. I).

The complaint further alleges that the property was transferred via quitclaim deed from Vintage Holdings to plaintiff Lonnie G. Schmidt on or around January 29, 2013. (Comp. ¶ 20). A copy of this second quitclaim deed is attached to the complaint as Exhibit 1.

A trustee's sale was held on February 4, 2013, with Wells Fargo purchasing the property

_____

[2]  Page two of the notice of default corroborates that "payment has not been made of: THE INSTALLMENT OF PRINCIPLA AND INTEREST WHICH BECAME DUE ON 11/1/2011 AND ALL SUBSEQUENT INSTALLMENTS . . ." (RJN, Exh. G, pg. 2).

[3]  It should be noted that plaintiff has a long history of litigation with Wells Fargo, usually as a defendant in cases involving fraudulent recordings.  For example, Wells Fargo obtained a judgment against Lonnie G. Schmidt and another of his companies (Practical Asset Management) on March 8, 2011, in the matter entitled *Wells Fargo Bank, N.A., etc., et al. v. Practical Asset Management, etc., et al*., Santa Clara Superior Court, Case No. 110CV178535 (the "Santa Clara Action").  A copy of the judgment in the Santa Clara Action is attached to the RJN as Exhibit K.  In the Santa Clara Action, Wells Fargo established that it had obtained title to real property by way of a trustee's sale and subsequently, Lonnie G. Schmidt fraudulently deeded the property, purportedly as an "authorized representative" of Wells Fargo, to his company Practical Asset Management.  A copy of the recorded fraudulent grant deed is attached to the RJN as Exhibit L.  Lonnie Schmidt's company then leased the property to the former owners.  The fraudulent grant deed was voided by the judgment in the Santa Clara Action. (RJN, Exh. K).  Lonnie Schmidt has employed a slightly different rent-skimming scam in connection with the property that is the subject of the instant lawsuit.  Here, Lonnie Schmidt acquired title from the borrowers <u>before</u> the foreclosure sale and then, post-foreclosure, rented the property to third parties.

1   as the highest bidder.  (Comp. ¶ 19; RJN, Exh. J).  As reflected in the trustee's deed upon sale,

2   the total debt owed to Wells Fargo on the subject loan stands at $668.940.80. (RJN, Exh. J, pg.

3   1).

4          Plaintiff Lonnie G. Schmidt now seeks to enjoin an eviction and to unwind the

5   foreclosure process, because his company has tenants in the property. (e.g., Comp. ¶ 56:

6   "Plaintiff's tenant[s] are disturbed in the peaceful possession of the Subject Property . . .").

7   Attached to the complaint as Exhibit 11 is a letter which Vintage Holdings sent to Wells Fargo's

8   unlawful detainer attorney on February 22, 2013, demanding that the bank "cease and desist [in]

9   further attempts to gain possession of the Subject Property . . .".

10         Specifically, plaintiff challenges the foreclosure process by alleging that NDEX was not

11  properly substituted in as the current trustee. (Comp. ¶¶ 19, 33, 50, 62).  It is further alleged that

12  Wells Fargo had no authority to conduct the foreclosure, because there was "no corporate

13  assignment" of the subject deed of trust from the original lender (World Savings) to Wells Fargo.

14  (Comp. ¶ 63, see also, ¶¶ 17, 50).  The complaint also contains an allegation that the loan "was

15  sold or transferred to investors" at some point, and therefore Wells Fargo lacked a security

16  interest in the property. (Comp. ¶ 59).  Finally, plaintiff reiterates that the borrowers (Todd and

17  Jody Price) properly rescinded the loan in December 2011, and based on this allegation, plaintiff

18  somehow has acquired the property free of any liens or encumbrances. (Comp. ¶¶ 76-83).

19         Based on the foregoing, Wells Fargo is named in claims for fraud, wrongful foreclosure,

20  quiet title, slander of title, civil conspiracy, and unfair competition.  As detailed below, not a

21  single claim has merit.

22  **3.    PLAINTIFF CANNOT PROSECUTE THIS ACTION UNLESS HE TENDERS THE**

23  **CONSIDERABLE DEBT OWED TO WELLS FARGO**

24         Much of the complaint seeks equitable relief, including restitution (Comp ¶ 111; Prayer

25  for Relief ¶ 6), an order quieting title in plaintiff's favor (Comp. ¶¶ 73-85; Prayer ¶ 3), and an

26  order enjoining an eviction and presumably unwinding the trustee's sale. (Comp. ¶ 111; Prayer

27  ¶ 9).  However, to receive such relief, a debtor must make a valid tender of the full outstanding

28  debt.  See e.g., *Sipe v. McKenna*, 88 Cal. App. 2d 1001, 1006 (1948) ("A party may not without

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or

2   have his title quieted against the purchaser at such a sale . . ."); *Gavina v. Smith*, 25 Cal. 2d 501,

3   505-506 (1944) (quiet title denied where the debtor had not fulfilled its contractual obligations);

4   *Touli v. Santa Cruz County Title Co.*, 20 Cal. App. 2d 495, 499-500 (1937) (rescission only

5   available once a tender has been made); *Meetz v. Mohr*, 141 Cal. 667, 673 (1904) (injunction

6   denied due to lack of tender).

7        Likewise, a plaintiff must make a valid tender when bringing a claim that challenges the

8   foreclosure process, or when asserting any cause of action "implicitly integrated to the sale."

9   See e.g., *Alicea v. GE Money Bank*, 2009 U.S. Dist. LEXIS 60813, *7-8 (N.D. Cal. July 16,

10  2009) ("When a debtor is in default on a home mortgage loan, and a foreclosure is either pending

11  or has taken place, the debtor must allege a credible tender of the amount of the secured debt to

12  maintain any cause of action for foreclosure."); *Montoya v. Countrywide Bank*, 2009 U.S. Dist.

13  LEXIS 53920, *32 (N.D. Cal. June 25, 2009) ("as a precondition to challenging a foreclosure

14  sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and

15  viable tender of payment of the secured debt."); *Abdallah v. United Savings Bank*, 43 Cal. App.

16  4th 1101, 1109 (1996) (the tender requirement applies "to any cause of action for irregularity in

17  the sale procedure.").  Accordingly, all six claims in this action must be accompanied by a

18  legitimate tender.

19        Here, payments on the subject mortgage have not been made since October 2011 (RJN,

20  Exh. G, pg. 2) and as reflected on the trustee's deed upon sale, the outstanding debt on the loan

21  stands at $668,940.80. (RJN, Exh. J, pg. 1).  Plaintiff contends that his company gained title to

22  the property in December 2011 (Exh. 2 to Comp.), yet Vintage Holdings, like the original

23  borrowers, has failed to make payments to Wells Fargo.  Given plaintiff's failure to make

24  mortgage payments for the past seventeen (17) months, an inability to tender even a portion of

25  the outstanding debt is manifest. *Anaya v. Advisors Lending Group*, 2009 U.S. Dist. LEXIS

26  68373, *27 (E.D. Cal. Aug. 3, 2009) (a failure to make monthly payments over a protracted

27  period reflects an inability to tender the amount owed).  For this reason alone, allowing this suit

28  to survive would not only be unfair, but a waste of judicial resources.

On a side note, it should be stressed that there appears an allegation throughout the pleadings that plaintiff "has the ability to tender all amounts owing on the Note" (Comp. ¶¶ 54, 69), yet this allegation by no means constitutes a genuine tender. Courts are clear that hollow averments of a "willingness or ability" to tender one's debt do not support a claim to challenge a trustee's sale. <u>No legitimate tender exists unless funds are actually placed in the hands of the trustee or beneficiary.</u> *Gaffney v. Downey Sav. & Loan Ass'n*, 200 Cal. App. 3d 1154, 1167 (1988). "The rules which govern tenders are strict and are strictly applied . . ." *Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 439 (2003) (demurrer upheld to challenge a sale where the borrower's "verbal tender" of an ability to pay was made before the sale, but the check did not arrive until three days after the sale).

## 4. THE ENTIRE COMPLAINT IS PREEMPTED BY THE HOME OWNERS' LOAN ACT ("HOLA")

**A.    As A Federally-Chartered Savings Bank, World Savings Operated Under HOLA**

In addition to lack of tender, this entire action is preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, *et seq.*, and its implementing regulations, including 12 C.F.R. § 560, articulated by the Treasury Department's Office of Thrift Supervision ("OTS").[4]  As detailed in Section 4(D) below, the allegations against Wells Fargo entirely relate to the "processing [and] servicing, sale or purchase of. . . mortgages", thereby triggering HOLA preemption.

When the loan in question was made to Todd and Jody Price, Wells Fargo's predecessor (World Savings Bank, FSB) was a federally-chartered savings bank, organized and operating under HOLA. On December 31, 2007, World Savings was renamed as Wachovia Mortgage, FSB, which is presently a division of Wells Fargo Bank, N.A. Attached to the accompanying RJN are true and correct copies of records evidencing World Savings' initial charter, its

---

[4] Congress enacted HOLA during the Great Depression to "restore the public's confidence in savings and loan associations at a time when 40% of home loans were in default." *Bank of America v. The City & County of San Francisco*, 309 F.3d 551, 559 (9th Cir. 2002). HOLA was enacted in part due to Congressional dissatisfaction with the regulation of home financing by the states. *American Banker Association v. Lockyear*, 239 F. Supp. 2d 1000, 1010 (E.D. Cal. 2002).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   subsequent name change and merger, its governance by the Office of Thrift Supervision, and

2   HOLA's application. (RJN, Exhs. A - E).

3   **B.      Regulations Promulgated By The OTS Preempt Any State Law That Affects The**

4   **Operation Of A Federal Savings Association**

5           Pursuant to HOLA, the OTS was granted power, "under such regulations as [it] may

6   prescribe – to provide for the organization, incorporation, examination, operation, and regulation

7   of…Federal savings associations…" 12 U.S.C. § 1464(a).  The OTS is thus authorized "to

8   prescribe a nationwide system of operation, supervision, and regulation which would apply to all

9   federal associations." *Glendale Fed. Sav. & Loan Ass'n v. Fox*, 459 F. Supp. 903, 909 (C.D. Cal.

10  1978).

11          OTS regulations are "preemptive of any state law purporting to address the subject of the

12  operations of a federal savings association." 12 C.F.R. § 545.2.  The "OTS hereby occupies the

13  entire field of lending regulation for federal savings associations…" and a federal savings bank,

14  "may extend credit as authorized under federal law, including this part, without regard to state

15  laws purporting to regulate or otherwise affect their credit activities."  12 C.F.R. § 560.2(a).[5]

16          Furthermore, the courts are quite clear that the HOLA regulations are "pervasive":

17                  We have described HOLA and its following agency regulations
                    as … so pervasive as to leave no room for state regulatory control.
18                  [B]ecause there has been a history of significant federal presence
                    in national banking, the presumption against preemption of state
19                  law is inapplicable.

20  *Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1004-1005 (9th Cir. 2008).

21          As briefed below, these "pervasive" OTS regulations preempt each state law claim.

22  **C.      State Laws Preempted by HOLA**

23          12 C.F.R. § 560.2(b) provides for preemption of state laws that purport to impose upon

24

25  _____

    [5]  Indeed, case law casts a wide net over claims preempted by HOLA.  In *Bank of America,*
26  *supra*, 309 F.3d at 558, the Court noted:  "[S]ince the passage of the HOLA in 1933, OTS
    regulations have governed the 'powers and operations of every federal savings and loan
27  association from its cradle to its corporate grave.'"  The Supreme Court has noted that, "[i]t
    would have been difficult for Congress to give the [OTS] a broader mandate." *Fidelity Federal*
28  *Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 159-160 (1982).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

federal savings banks and their successors[6] any requirements regarding:

> * * *

> **Processing**, origination, **servicing, sale or purchase of**, or investment or participation in, **mortgages**; . . .  12 C.F.R. § 560.2(b)(10) (emphasis added).

> * * *

**D.    The Application of HOLA Preempts Each State Law Claim**

The preemption analysis under HOLA is simple.  Step one determines whether the type of state law appears on the list set forth in 12 C.F.R. § 560.2(b).  If it does, the analysis ends and the state law is preempted.  There is no second step.  *Silvas, supra*, at 1005.  Any doubt is resolved in favor of preemption.  *Weiss v. Washington Mutual Bank*, 147 Cal. App. 4th 72, 77 (2007) (among other things, fraud and UCL claims were preempted by HOLA).  It should be added that in determining whether a state law claim falls within one of the categories of 12 C.F.R. § 560.2(b), courts focus on the "functional effect upon lending operations of maintaining the cause of action", rather than the precise label a plaintiff attaches to the claim.  *Naulty v. GreenPoint Mortg. Funding, Inc*., 2009 U.S. Dist. LEXIS 79250, *12 (N.D. Cal. Sept. 3, 2009).

In the present case, the complaint presents claims styled as torts such as "fraud", "civil conspiracy", "slander of title", and "unfair competition", yet what plaintiff really challenges is the "processing [and] servicing, sale or purchase of. . . mortgages." 12 C.F.R. § 560.2(b)(10).  For example, the fraud claim asserts that Wells Fargo "was not the [rightful] foreclosing beneficiary" (Comp. ¶ 50).  The slander of title claim alleges that Wells Fargo had no authority to record the notice of default, notice of sale, and trustee's deed upon sale. (Comp. ¶ 89).  Such challenges to the lender's foreclosure rights unquestionably fall within the ambit of

---

[6]  The application of HOLA also applies to the successors of federal savings banks.  See e.g.*, Guerrero v. Wells Fargo Bank, N.A*., 2010 U.S. Dist. LEXIS 96261 (C.D. Cal. Sept. 14, 2010) ("Where a national association, such as [Wells Fargo Bank, N.A.], acquires the loan of a federal savings bank, it is proper to apply preemption under HOLA."); *DeLeon v. Wells Fargo Bank, N.A*., 729 F. Supp. 2d 1119, 1126 (N.D. Cal. June 9, 2010); *Zlotnik v. U.S. Bancorp, et al*., 2009 U.S. Dist. LEXIS 119857, *17-26 (N.D. Cal. Dec. 22, 2009); *see also,* 9 Witkin, Summary of Cal. Law, Corporations § 198 (10th ed. 2005) (In a merger the surviving entity "succeeds to the rights, property, debts and liabilities, without other transfer.").

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  § 560.2(b)(10) – after all, nothing more fundamentally relates to loan "servicing" than a lender's

2  attempts to collect mortgage payments and if necessary, to conduct a non-judicial foreclosure.  In

3  addition, the securitization allegations within the "wrongful foreclosure" claim (Comp. ¶ 59)

4  trigger § 560.2(b)(10) because they take issue with the "sale . . . of . . . mortgages."

5  Recent case law is instructive with respect to the sweeping scope of preemption in similar

6  circumstances.  For example, in *Morrison v. Wachovia Mortgage*, 2012 U.S. Dist. LEXIS 38847

7  (C.D. Cal. Jan. 9, 2012), the borrower alleged that her loan had been sold to another entity and

8  therefore Wachovia had wrongfully initiated foreclosure proceedings.  The district court

9  concluded that such securitization allegations fell squarely within the preemptive scope of the

10  HOLA.  *Morrison*, 2012 U.S. Dist. LEXIS at *19.

11  In *Winding v. Cal-Western Reconveyance Corp.*, 2011 U.S. Dist. LEXIS 8962, *33-34

12  (E.D. Cal. Jan. 21, 2011), plaintiff challenged the lender's right to conduct a foreclosure, based

13  on allegations that the "negotiable instruments" had been transferred, thereby creating questions

14  as to the true ownership of the note.  In granting the bank's motion to dismiss without leave to

15  amend, the court held that: "HOLA preemption…warrants dismissal of the complaint's claims

16  given that they address "sale or purchase of…or participation in, mortgages [12 C.F.R.

17  § 560.2(b)(10)]."  *Winding*, 2011 U.S. Dist. LEXIS at *34; *see also*, *Castillo v. Wachovia

18  Mortg.*, 2012 U.S. Dist. LEXIS 50926, *15 (N.D. Cal. Apr. 11, 2012) ("[s]uch claims, based on

19  Defendants' alleged failure to follow proper procedures in maintaining and servicing a loan and

20  failure to demonstrate their authority to foreclose, have consistently been determined to fall

21  under the umbrella of claims preempted by HOLA."); *Hunt v. Wells Fargo Bank N.A.*, 2011 U.S.

22  Dist. LEXIS 29110, *2 (N.D. Cal. Mar. 21, 2011) ("Each of plaintiff's claims is preempted by

23  [HOLA] . . . plaintiff's quiet title and slander claims appear to be rooted in allegations that Wells

24  Fargo improperly purchased the loan in question or is otherwise not entitled to ownership of the

25  loan."); *Sanchez v. Wachovia Mortg., FSB*, 2011 U.S. Dist. LEXIS 2444, *19 (S.D. Cal. Jan. 10,

26  2011) ("[C]laims of misconduct surrounding the foreclosure proceedings clearly fall under the

27  preemption provisions for 'processing, origination, sale or purchase of . . . mortgages' and

28  'disclosure.'").

It should be added that there is ample authority relating to preemption of state claims that would generally impact the "servicing" of a mortgage. For example, in *Murillo v. Aurora Loan Services, LLC*, 2009 U.S. Dist. LEXIS 61791, *11 (N.D. Cal. July 17, 2009)[7], the district court found that HOLA preempted a Civil Code § 2923.5 claim that alleged: "Defendants failed to properly file a declaration with their notice of default."

In *DeLeon, supra,* 729 F. Supp. 2d 1119, 1127 (N.D. Cal. June 9, 2010), the plaintiffs alleged that a bank employee represented that no foreclosure would occur because modification negotiations were ongoing, and that the lender wrongfully proceeded to sale without "concluding" these discussions. In dismissing the borrowers' claims, the court found that various state law claims related to loan "servicing" and were therefore preempted. *DeLeon*, 729 F. Supp. 2d at 1124-28. Specifically, the court preempted claims for "wrongful foreclosure," "cancellation of the trustee deed," violation of Civil Code § 2923.5, and quiet title. *Id.*

A similar holding was reached in *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022 (N.D. Cal. Oct. 25, 2010). In *Nguyen*, the borrower alleged that various wrongs were committed during the foreclosure process and based on these purported defects, brought claims for quiet title, "wrongful foreclosure," and violation of Civil Code §§ 2923.5 and 2924. The court found that these claims were preempted by § 560.2(b)(10), because they were based on allegedly improper foreclosure procedures. *Nguyen*, 749 F. Supp. 2d at 1031-33; see also, *Giordano v. Wachovia Mortg., FSB*, 2010 U.S. Dist. LEXIS 136284, *7 (N.D. Cal. Dec. 14, 2010).

Here, as in the above decisions, the state law claims against Wells Fargo are preempted, for they fit squarely within § 560.2(b)(10). If not preempted, these types of state claims would unquestionably impinge upon the lending and servicing policies of federal loan associations and their successors. This is something Congress sought to avoid through the passage of HOLA.

---

[7] Recent holdings that rely on *Murillo* include: *Pinales v. Quality Loan Service Corp.*, 2010 U.S. Dist. LEXIS 2114 (S.D. Cal. Sept. 22, 2010); *Parcray v. Shea Mortg., Inc.* 2010 U.S. Dist. LEXIS 40377, *24 (E.D. Cal. April 23, 2010); *Gonzalez v. Alliance Bancorp*, 2010 U.S. Dist. LEXIS 47943, *16 (N.D. Cal. April 19, 2010); *Odinma v. Aurora Loan Services*, 2010 U.S. Dist. LEXIS 28347 (N.D. Cal. Mar. 23, 2010).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

**5. THE FRAUD CLAIM, AS WITH THE REST OF THE COMPLAINT, IS
PREDICATED ON ALLEGATIONS WHICH ARE FACTUALLY INCORRECT
AND FAIL AS A MATTER OF LAW**

The elements of fraud and deceit are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages. *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093-1094 (C.D. Cal. Sept. 16, 1999) (reciting California elements).

Here, the complaint alleges that "the statements and representations in the [trustee's deed upon sale] are false." (Comp. ¶ 50). Specifically, the fraud claim is predicated on the following three contentions: (1) that Wells Fargo "was not the foreclosing beneficiary" under the deed of trust; (2) that Wells Fargo "submitted no bid and paid no money" for the property at auction; and (3) that "NDEX was not the duly appointed trustee . . ." (Comp. ¶ 50). As explained below, all three of these assertions are patently false and therefore there was no "misrepresentation".

**A. Wells Fargo Clearly Had Standing To Foreclose on the Subject Property**

First, the judicially noticeable documents before the Court show that the loan that the Prices obtained in July 2007 was <u>not</u> sold, transferred, or assigned to another entity. The original lender (World Savings Bank, FSB) simply changed its name and then merged into Wells Fargo Bank, N.A.

For example, Todd and Jody Price signed the deed of trust on July 6, 2007. (RJN, Exh. F). This deed of trust denotes "World Savings Bank, FSB, its Successors and/or Assignees" as the "lender/trustee." (RJN, Exh. F, pg. 1). The notice of default, substitution of trustee, notice of sale, and trustee's deed make the respective capacities of the parties crystal clear, showing the transition from "World Savings Bank, FSB" to "Wachovia Mortgage, FSB," and the subsequent merger into "Wells Fargo Bank, N.A." (RJN, Exhs. G - J). Public documents issued by the OTS, the OCC, and the FDIC corroborate this corporate transition (RJN, Exhs. A – E).

Indeed, ample district court authority acknowledges this name change and merger. See e.g., *DeLeon, supra*, 729 F. Supp. 2d at 1121 (court found that World Savings Bank, FSB became Wachovia Mortgage, FSB, and then merged into Wells Fargo Bank, N.A.); *Wolf v. Wells*

1   *Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 117835, *3 (N.D. Cal. Oct. 12, 2011) ("World

2   Savings changed its name to Wachovia Mortgage in late 2007. Wachovia Mortgage then became

3   part of Wells Fargo Bank in 2009 and is the current holder of the note …"); *Nguyen v. Wells*

4   *Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1031 (N.D. Cal. Oct. 25, 2010) (same).

5          In light of the foregoing, Wells Fargo had a clear right to conduct non-judicial

6   foreclosure proceedings with respect to the subject property.

7   **B.     A Completed Non-Judicial Foreclosure Is A Final Adjudication Of The Rights Of**

8          **A Borrower And Lender**

9          It should be added that a trustee's deed that states compliance with all statutory

10   requirements creates a presumption as to the validity of the sale.  Civil Code § 2924; *Stevens v.*

11   *Plumas Eureka Annex Mining Co.*, 2 Cal. 2d 493, 497 (1935).  The presence of such language is

12   "prima facie evidence" that the sale complied with the statutory requirements.  Civil Code

13   § 2924(c).  There is a common law presumption that a foreclosure sale has been conducted

14   regularly and fairly.  *Stevens, supra,* 2 Cal. 2d at 497; *Melendrez v. D & I Inv.*, 127 Cal. App. 4th

15   1238, 1258 (2005) (citing *Brown v. Busch*, 152 Cal. App. 2d 200, 204 (1957)).

16          Here, the recorded trustee's deed upon sale states that: "All requirements of law

17   regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or

18   the personal delivery of the copy of the Notice of Default and the posting and publication of

19   copies of the Notice of a Sale have been complied with." (RJN, Exh. J, pg. 1).  In the face of

20   conclusory denials of proper sale mechanics, the recorded notices are sufficient to defeat claims

21   based on an irregularity in the foreclosure process.  *Odinma v. Aurora Loan Servs.*, 2010 U.S.

22   Dist. LEXIS 54190, *18-20 (N.D. Cal. June 3, 2010).  It is the burden of the party challenging

23   the trustee's sale to prove such irregularity and thereby overcome the presumption of the sale's

24   regularity.  *Melendrez*, 127 Cal. App. 4th at 1258.

25          In an attempt to challenge the validity of the trustee's deed, plaintiff insists that Wells

26   Fargo "submitted no bid and paid no money" for the property at the auction. (Comp. ¶ 50).  Yet

27   this allegation is eviscerated when one inspects the trustee's deed – page two states that Wells

28   Fargo (the grantee) acquired the property for $243,721.00 as the highest bidder. (RJN, Exh. J).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   Plaintiff cannot maintain in wholly conclusory fashion that the events as described in this

2   recorded instrument are false.

3   **C.     NDEX Was Properly Substituted In As The Bank's Trustee**

4           The allegation that "NDEX was not the duly appointed trustee at the time the [notice of

5   default] was recorded" is also defective. (Comp. ¶ 50).  Inspection of the notice of default reveals

6   that NDEX executed this foreclosure notice as agent for the beneficiary, Wells Fargo. (RJN, Exh.

7   G, pg. 3).  Moreover, Civil Code § 2934a(c) expressly allows a substitution of trustee to be

8   executed and recorded <u>after</u> the notice of default, as long as the substitution is recorded prior or

9   concurrent with the notice of sale:

10              If the substitution is effected after a notice of default has been
                recorded but prior to the recording of the notice of sale, the
11              beneficiary or beneficiaries or their authorized agents shall cause a
                copy of the substitution to be mailed, prior to, or concurrently with,
12              the recording thereof, in the manner provided in Section 2924b, to
                the trustee then of record and to all persons to whom a copy of the
13              notice of default would be required to be mailed by the provisions
                of Section 2924b.  An affidavit shall be attached to the substitution
14              that notice has been given to those persons and in the manner
                required by this subdivision.
15

16          In light of the foregoing, it is apparent that the California Civil Code was complied with.

17  The substitution of trustee that appointed NDEX was executed on November 1, 2012 and

18  recorded on November 26, 2012. (RJN, Exh. H).  The notice of sale was not recorded until

19  January 9, 2013. (RJN, Exh. I).

20  **D.     The Fraud Claim Is Plagued By Other Shortcomings**

21          In addition to the fact that neither Wells Fargo nor its trustee made a misrepresentation,

22  plaintiff does not explain how he "justifiably relied" on any alleged bank representation, and

23  more importantly, the pleadings cannot present a cognizable damages theory.  While the

24  complaint alleges that Vintage Holdings acquired rights to the property in December 2011

25  (Comp. ¶ 21), the pleadings present no claim that either Vintage Holdings or plaintiff made any

26  mortgage payments.  At the same time, the property has presumably been generating rental

27  income for plaintiff during the past seventeen months.

28  ///

**6.   THE WRONGFUL FORECLOSURE CLAIM IS LIKEWISE DEFECTIVE**

Plaintiff's second claim for "wrongful foreclosure" reasserts the earlier allegations in the complaint and offers two additional theories.  First, plaintiff contends that Wells Fargo lacked standing to foreclose because sometime "after the origination and funding of Todd Price and Jody L. Price's loan, it was sold or transferred to investors or other entities and [therefore] Wells Fargo did not own the loan or the corresponding note at the time of the foreclosure sale." (Comp. ¶ 59).  Second, plaintiff maintains that there should have been a recorded assignment of the deed of trust from World Savings to Wells Fargo. (Comp. ¶ 63).  Neither allegation has any merit.

**A.   Plaintiff's "Securitization" Theory Is Both Untrue And Fails As A Matter Of Law**

Plaintiff's allegation that the loan "was sold or transferred to investors or other entities" is not a proper basis to challenge the foreclosure process and to set aside the trustee's sale. (Comp. ¶ 59).  Putting aside the lack of truth to such allegations, the power of sale pursuant to the deed of trust is not lost if a loan is securitized or transferred to a trust pool, and the lender, beneficiary, trustee, or any of their agents can initiate non-judicial foreclosure proceedings upon the borrower's default.  *Lane v. Vitek Real Estate Indus. Group*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. May 11, 2010).  In *Lane*, the court rejected the borrower's contention that "none of the defendants have the authority to foreclose because their loan was packaged and resold in the secondary market, where it was put into a trust pool and securitized."  *Lane*, 713 F. Supp. 2d at 1099.  The court explained:

> The argument that parties lose their interest in a loan when it is assigned to a trust pool has also been rejected by many district courts.  See e.g., *Benham*, 2009 U.S. Dist. LEXIS 91287, 2009 WL 2880232, at *3 ("Other courts . . . have summarily rejected the argument that companies like MERS lose their power of sale pursuant to the deed of trust when the original promissory note is assigned to a trust pool."); *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 2009 WL 2137393, at *2 (N.D. Cal. 2009).  Accordingly, the court must grant CMI and MERS's motion to dismiss plaintiffs' wrongful foreclosure claim.

*Id*. at 1099.  See also, *Roque v. Suntrust Mortg., Inc*., 2010 U.S. Dist. LEXIS 11546, *8 (N.D. Cal. Feb. 9, 2010) ("Plaintiff's final attempt to state a claim for declaratory relief rests on the tenuous assertion that the beneficiary of record of the deed of trust does not have standing to

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  foreclose upon the property because the [Pooling & Servicing Agreement] somehow cancelled

2  the power of sale contained in the deed of trust due to the unknown chain of ownership. . . .

3  Uniformly among courts, production of the note is not required to proceed in foreclosure and

4  similarly no production of any chain of ownership is required."); *Gomez v. Wells Fargo Home*

5  *Mortg.*, 2011 U.S. Dist. LEXIS 134092, *36 (N.D. Cal. Nov. 21, 2011) (possession of note is not

6  a precondition to a non-judicial foreclosure).

7  　　　Another illustrative case is *Marty v. Wells Fargo Bank*, 2011 U.S. Dist. LEXIS 29686

8  (E.D. Cal. March 22, 2011), where plaintiff alleged that securitization was an improper

9  conversion and rendered the deed of trust invalid.  *Id.* at *20.  However, the district court

10 explained that: "this claim is frivolous, has no support in the law, and should be dismissed with

11 prejudice."  *Id.*

12 　　　The same result is warranted in the instant action.  Not to mention that judicially

13 noticeable documents demonstrate that the loan that the Prices obtained in 2007 was not sold,

14 transferred, or assigned.  The original lender (World Savings Bank, FSB) simply changed its

15 name and then merged into Wells Fargo Bank, N.A. (RJN, Exhs. A - J).  This name change and

16 merger was addressed in detail in Section 5 above.

17 **B.** 　**Contrary To Plaintiff's Allegations, No Assignment Of The Deed Of Trust Was**

18 　　**Necessary**

19 　　　The wrongful foreclosure claim also contains the allegation that the foreclosure process

20 was flawed because there was "no corporate assignment from WORLD to WF Bank in evidence

21 or on the public record . . ." (Comp. ¶ 63).  Wells Fargo concedes that there are no assignments

22 of the subject deed of trust, for as explained above, none were necessary.  Once again, the

23 original lender merely changed its name and merged into Wells Fargo.

24 　　　Equally important, cases interpreting Civil Code § 2932.5 – the relevant Code section

25 relating to assignments – hold that it does not even apply to the power of sale under a deed of

26 trust.  See e.g., *Wolf v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 114331, *11 (N.D. Cal.

27 Oct. 4, 2011) ("plaintiff's loan is secured by a deed of trust . . . which is not covered by this

28 statute."); *Calvo v. HSBC Bank USA, N.A.*, 2011 Cal. App. LEXIS 1184, *5 (Cal. App. 2d Dist.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  2011) ("It has been established since 1908 that this statutory requirement that an assignment of

2  the beneficial interest in a debt secured by real property must be recorded in order for the

3  assignee to exercise the power of sale applies only to a mortgage and not to a deed of trust.");

4  *Parcray v. Shea Mortg., Inc.*, 2010 U.S. Dist. LEXIS 40377, *31 (E.D. Cal. Apr. 23, 2010)

5  ("There is no requirement under California law for an assignment to be recorded in order for an

6  assignee beneficiary to foreclose.").

7  **C.   Even If Plaintiff Could Cite A Flaw in the Foreclosure Process, He Cannot**

8  **Demonstrate That He Was Prejudiced By Any Purported Defect**

9  Finally, courts agree that "hyper-technical defects" are not a legitimate basis to challenge

10  a non-judicial foreclosure.  For example, *Knapp v. Doherty*, 123 Cal. App. 4th 76, 93-94 (2004)

11  upheld a sale against technical objections to notice requirements because:  "[t]here was no

12  prejudicial procedural irregularity."  See also, *Davenport v. Litton Loan Servicing,* 2010 U.S.

13  Dist. LEXIS 71561, *24 (N.D. Cal. July 16, 2010); *Lawther v. OneWest Bank*, 2010 U.S. Dist.

14  LEXIS 131090, *15 (N.D. Cal. Nov. 30, 2010) (<u>emphasizing that a plaintiff must provide</u>

15  <u>allegations *that the statutory violation itself*, not just the foreclosure, was the cause of injury</u>).  In

16  the present action, plaintiff seeks to seize upon some non-existent defect in the foreclosure

17  mechanics, yet as in the above cases, plaintiff does not explain how he was possibly prejudiced.

18  Plaintiff never disputes that the Prices defaulted on the loan, nor does he claim to have made any

19  payments to Wells Fargo.  Equally important, plaintiff does not contend that the supposed

20  securitization or substitution of trustee prevented him from curing the delinquency and

21  reinstating the subject mortgage.  Put quite simply, the property was foreclosed on because no

22  mortgage payment was made for a protracted period – not due to the alleged conduct of Wells

23  Fargo or its trustee.

24  **7.   THERE IS NO BASIS FOR A JUDICIAL DETERMINATION QUIETING TITLE**

25  **IN PLAINTIFF'S FAVOR**

26  In the third claim, plaintiff seeks an order from the Court which quiets title in the

27  property in plaintiff's favor, free of any liens or encumbrances. (Comp. ¶¶ 83-85).  This quiet

28  title claim is predicated on the theory that the original borrowers notified Wells Fargo that they

1   wished to rescind the loan in December 2011 (Comp. ¶ 76) and that by failing to respond to this

2   rescission notice, the bank "thereby consented to the rescission of the contract." (Comp. ¶ 77).

3       As a preliminary matter, plaintiff's position that Wells Fargo had the power to rescind the

4   loan certainly undermines his earlier contentions that this lender had no standing to conduct the

5   foreclosure. Plaintiff cannot have it both ways – if Wells Fargo possessed the authority to

6   rescind the loan contract, then plaintiff cannot maintain that an alleged securitization

7   extinguished Wells Fargo's security interest (Comp ¶ 59), that there needed to be a recorded

8   assignment of the deed of trust (Comp. ¶¶ 17, 63), or that Wells Fargo otherwise lacked authority

9   to conduct a foreclosure as the rightful beneficiary under the deed of trust (Comp. ¶¶ 33, 50, 89).

10      Furthermore, plaintiff cannot side step the tender requirement, which is essential to

11  maintain a quiet title claim. See e.g., *Sipe v. McKenna*, 88 Cal. App. 2d 1001, 1006 (1948);

12  *Gavina v. Smith*, 25 Cal. 2d 501, 505-506 (1944). Tender of the full loan balance is also a

13  necessary precondition to rescission of a loan contract, which in this case is the predicate for

14  plaintiff's quiet title claim.

15      Indeed, courts are clear that the loan proceeds must be restored to the lender before

16  rescission is an available remedy under state law. See e.g., *Brown v. Bank of America*, 2011 U.S.

17  Dist. LEXIS 38991, *17 (E.D. Cal. Mar. 31, 2011) ("[r]ecission is the only remedy available

18  under [Civil Code] § 1632, and that remedy is not available to plaintiff because, as noted above,

19  he has not alleged that he is able to tender the proceeds of his loan."); *Tiqui v. First Nat'l Bank of

20  AZ*, 2010 U.S. Dist. LEXIS 33326, *12 (S.D. Apr. 5, 2010) ("In a rescission action, the party

21  seeking rescission must restore, or offer to restore, to the non-rescinding party all consideration

22  received under the contract. See Cal. Civ. Code § 1691(b)."); *Touli v. Santa Cruz County Title

23  Co.*, 20 Cal. App. 2d 495, 499-500 (1937) (rescission is only available once the debtor restores to

24  the other party everything of value which he has received under the contract).

25      Likewise, if rescission is requested under TILA, 15 U.S.C. § 1635(b) requires the

26  borrower to tender any money received from the lender in order to complete the loan rescission.

27  15 U.S.C. § 1635(b). In fact, the recent wave of foreclosure litigation has forced every district in

28  California to consider claims for TILA rescission. They have universally determined that a

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

CASE NO.: 3:13-CV-01509-MEJ
MEMO OF POINTS AND AUTHORITIES

1  plaintiff must plead and prove an ability to tender the loan proceeds necessary to effectuate

2  rescission. See e.g., *Garcia v. Wachovia Mortg. Corp*., 676 F. Supp. 2d 895 (C.D. Cal. 2009);

3  *Pagtalunan v. Reunion Mortg., Inc*., 2009 U.S. Dist. LEXIS 34811, *9-10 (N.D. Cal. Apr. 8,

4  2009); *Andrade v. Wachovia Mortg*., 2009 U.S. Dist. LEXIS 34872 (S.D. Cal. Apr. 24, 2009);

5  *Reganit v. Kay-Co. Invs.*, 2009 U.S. Dist. LEXIS 34883 (E.D. Cal. Apr. 24, 2009).

6  In the present case, the Prices did not restore the loan proceeds that they received from

7  Wells Fargo's predecessor in July 2007. Nor did these original borrowers even have the ability

8  to tender a portion of the loan amount, as evidenced by the fact that they defaulted on the

9  mortgage in November 2011. (RJN, Exh. G, pg. 2).

10  Putting aside the issue of tender, the purported rescission requests made by the Prices in

11  December 2011 are barred by the application statutes of limitations. The loan transaction at

12  issue closed in July 2007, as reflected by the date on the deed of trust. (RJN, Exh. F). However,

13  the Prices did not send rescission notices to Wells Fargo until over four years later in December

14  2011. (Comp. ¶ 26).

15  With respect to the rescission request under state law, "[p]laintiff alleges that Todd Price

16  and Jody L. Price . . . cancelled their loan for fraud in the inception and execution of the loan

17  contract based on state law within § 1688, *et seq*. of the California Civil Code." (Comp. ¶ 29).

18  Because the Prices sought "relief on the ground of fraud or mistake", their rescission request was

19  governed by the three-year limitations period set forth in C.C.P. § 338(d).

20  Similarly, the right of rescission under TILA expires three years after the date of

21  consummation of the transaction. 15 U.S.C. § 1635(f) ("[a]n obligor's right of rescission shall

22  expire three years after the date of consummation of the transaction or upon the sale of the

23  property, whichever occurs first…"). Thus, any TILA rescission claim ran in mid-2010, three

24  years after the Prices secured the subject loan.

25  In light of the foregoing, the quiet title claim should be dismissed with prejudice, as with

26  the rest of the complaint.

27  / / /

28  / / /

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1

## 8.   THE SLANDER OF TITLE CLAIM SUFFERS FROM SERIOUS

2

## SHORTCOMINGS

3      To state a claim for slander of title, one must plead:  (1) a direct or indirect disparagement

4   of the owner's title; (2) the disparaging statement must have been published; (3) the matter

5   published must be untrue; (4) the statement must not have been privileged; (5) the statement

6   must have been made with malice; and (6) the statement must have been the proximate cause of

7   pecuniary loss by the plaintiff.  *Gudger v. Manton,* 21 Cal. 2d 537, 541-43 (1943).

8      Here, plaintiff realleges that the 2007 deed of trust was rescinded and therefore Wells

9   Fargo and its trustee committed slander of title when recording the notice of default, notice of

10  sale, and trustee's deed. (Comp. ¶ 89).  Yet as briefed earlier in this motion, there never was a

11  true rescission of the loan contract and therefore the recorded foreclosure notices were not false.

12     In addition, plaintiff cannot recover damages in connection with this claim, since the

13  pleadings are devoid of *facts* that would pierce the qualified common-interest privilege afforded

14  to trustees and beneficiaries under Civil Code § 2924(d).  This subject is addressed in detail in

15  Section 11 below.

16  ## 9.   CIVIL CONSPIRACY IS NOT AN INDEPENDENT CAUSE OF ACTION

17     "[I]t is well settled that 'there is no separate tort of civil conspiracy, and there is no civil

18  action for conspiracy to commit a recognized tort unless the wrongful act itself is committed

19  and damages result therefrom.'"  *Kerr v. Rose*, 216 Cal. App. 3d 1564 (1990).  Civil

20  conspiracy, rather, is a legal doctrine that only operates where an actual tort has been

21  committed.  *Applied Equipment Corp. v. Litton Saudi Arabia Ltd*., 7 Cal. 4th 503, 511 (1994)

22  held:

23         Standing alone, a conspiracy does not harm and engenders no tort
           liability.  It must be activated by the commission of an actual tort.
24         "A civil conspiracy, however atrocious, does not per se give rise to
           a cause of action unless a civil wrong has been committed resulting
25         in damage."  *Doctors' Co. v. Superior Court*, 49 Cal.3d 39, 44
           (1989).
26

27     Here, the fifth claim for conspiracy fails because plaintiff has not properly alleged an

28  underlying tort that was committed by Wells Fargo.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

10. **THE UNFAIR COMPETITION CLAIM IS CONCLUSORY AND MERITLESS**

A cause of action under Business & Professions Code § 17200 must state with reasonable particularity the facts showing unlawful, unfair, or fraudulent business acts on the part of the defendant. *Korea Supply Company v. Lockheed Martin Corporation*, 29 Cal. 4th 1134, 1143 (2003); *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993).

In the present case, Wells Fargo's alleged acts were not unlawful, unfair, or fraudulent. The UCL claim is entirely predicated on plaintiff's five prior causes of action. For the reasons set forth in Sections 3 through 9 of this motion, the UCL claim falls by the wayside.

In addition to being predicated on fatally defective claims, this final cause of action fails due to plaintiff's lack of standing. A private litigant asserting a UCL claim must allege that they suffered injury in fact and lost money or property as a result of the unfair competition. B&P § 17204. "Thus, a private person has no standing under the UCL unless that person can establish that the injury suffered and the loss of property or money resulted from conduct that fits within one of the categories of 'unfair competition' in section 17200." *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1098 (2007).

Here, there is an absence of any causation of actual loss, which is essential. *Hall v. Time, Inc.*, 158 Cal. App. 4th 847 (2008). Plaintiff has no actual loss because ever since he gained title to the property via a quitclaim deed, he has collected rents yet failed to make mortgage payments. Accordingly, plaintiff lacks standing to bring an unfair competition claim against Wells Fargo.[8]

Finally, it must be reiterated that each claim in this suit is vitiated due to plaintiff's inability to tender the debt owed to Wells Fargo. Indeed, tender is essential to maintain an unfair

---

[8]  An illustrative case on lack of standing is *DeLeon v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 8296 (N.D. Cal. Jan. 28, 2011). In *DeLeon*, the plaintiffs brought a UCL claim following a foreclosure, alleging that their lender wrongfully proceeded to sale. The court held that "the facts alleged suggest that Plaintiffs lost their home because they became unable to keep up with monthly payments and lacked the financial resources to cure the default . . . it does not appear that [the bank's] conduct resulted in a loss of money or property. For this reason, Plaintiffs lack standing to sue under the UCL, and the claim must be dismissed." *DeLeon*, 2011 U.S. Dist. LEXIS at *21.

competition claim, for only equitable remedies are available under the UCL – specifically, restitution and injunctive relief.  *Korea, supra*, 29 Cal. 4th 1134, 1144-45 (2003); *Kasky v. Nike, Inc*., 27 Cal. 4th 939 (2002).

## 11.   THE QUALIFIED PRIVILEGE OF CIVIL CODE §§ 2924(d) AND 47 DEFEATS PLAINTIFF'S DAMAGE CLAIMS

Just as plaintiff's lack of tender is a bar to each claim that challenges the foreclosure process, the qualified common-interest privilege precludes a recovery of damages.

Indeed, it is well-established that any statutorily-required mailing, publication, and delivery of notices in connection with a non-judicial foreclosure, and the performance of any statutory non-judicial foreclosure procedures by a trustee and beneficiary[9] are "privileged communications under the qualified, common-interest privilege of [Civil Code] Section 47, subdivision (c)(1)."  *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 333 (2008).

Thus, as beneficiary under the deed of trust, Wells Fargo was cloaked in a qualified privilege when publishing and delivering any notices in the non-judicial foreclosure, and in performing any associated procedures involved therein.  Significantly, this qualified privilege can only be lost when an act was motivated by hatred or ill will, or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights.  *Kachlon*, 168 Cal. App. 4th at 336.

Since this qualified privilege creates a presumption that any communication is made innocently, any pleadings seeking to pierce this privilege must contain affirmative allegations of malice.  *Smith v. Hatch*, 271 Cal. App. 2d 39, 47 (1969); *Martin v. Kearney*, 51 Cal. App. 3d 309, 311-312 (1975).  Here, plaintiff fails to allege any <u>facts</u> showing that Wells Fargo acted with malice when enforcing its security interest and conducting a foreclosure.  Therefore, plaintiff cannot recover damages as sought in the complaint.  See e.g., *Permito v. Wells Fargo*

---

[9]  Section 2924 grants privilege protection not only to trustees, but also to beneficiaries insofar as they may act as trustees.  *Kachlon v. Markowitz* 168 Cal. App. 4th 316, 340 (2008) (the plain meaning of the 1996 amendment to Section 2924 makes the recording of the notice of default by the beneficiary, and any other statutorily authorized act of the beneficiary, a privileged communication under Section 47(c)(1)).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   *Bank, N.A.*, 2012 U.S. Dist. LEXIS 55977, *24-25 (N.D. Cal. Apr. 20, 2012) (allegations that

2   "Wells Fargo acted recklessly" during the foreclosure process were insufficient to pierce the

3   qualified statutory privilege); *Snyder v. Wachovia Mortg.*, 2010 U.S. Dist. LEXIS 68956, *18

4   (E.D. Cal. July 9, 2010) ("Subsection (d) of California Civil Code section 2924 . . . renders as

5   California Civil Code section 47 'privileged communications' the 'mailing, publication, and

6   delivery' of foreclosure notices and 'performance' of foreclosure procedures . . . Wachovia's

7   alleged wrongs are subject to section 2924(d) immunity."); *Bouyer v. Countrywide Bank, FSB*,

8   2009 U.S. Dist. LEXIS 53940, *18-20 (N.D. Cal. June 25, 2009) (same).

## 12.   <u>CONCLUSION</u>

10       For all of the foregoing reasons, Wells Fargo requests an order granting its motion to

11   dismiss all six claims without leave to amend.

12

13                                              Respectfully submitted,

14   Dated: April 12, 2013                      ANGLIN, FLEWELLING, RASMUSSEN,
                                                 CAMPBELL & TRYTTEN LLP

15

16                                              By:   */s/ Michael Rapkine*
                                                     Michael Rapkine
17                                                   mrapkine@afrct.com
                                                 Attorneys for Defendant
18                                               WELLS FARGO BANK, N.A
                                                 ("Wells Fargo")
19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**DEFENDANT WELLS FARGO'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

on the interested parties in said case as follows:

| Served By Means Other than Electronically Via the Court's CM/ECF System | Served Electronically Via the Court's CM/ECF System |
|---|---|
| *Plaintiff in Pro Per* | *Attorneys for Defendant NDeX WEST, LLC* |
| Lonnie Schmidt 11230 Gold Express Drive Suite 310-361 Gold River, CA 95670 Tel: 949.459.4190 \| Fax: 866.351.3309 | Edward A. Treder, Esq. BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP 20955 Pathfinder Road, Suite 300 Diamond Bar, CA 91765 Tel. 626.915.5714 \| Fax: 909.595.7640 Email: edwardt@bdfgroup.com |

☒   **BY MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence by mailing. Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on **April 12, 2013**.

| Barbara Cruz | */s/ Barbara Cruz* |
|---|---|
| (Type or Print Name) | (Signature of Declarant) |

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP